IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KIMBLE DAVIS                                                                               PLAINTIFF

v.                                        Case No. 4:18-cv-4042

RIVERVIEW BEHAVIORAL
HEALTH, LLC                                                                               DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendant Riverview Behavioral Health, LLC ("Riverview"). ECF No. 25. Plaintiff Kimble Davis has filed a response. ECF No. 32. Riverview has filed a reply. ECF No. 38. The motion is ripe for the Court's consideration. For the reasons that follow, the Court finds that Riverview's Motion for Summary Judgment should be granted.

### I. BACKGROUND

As a preliminary matter, the Court addresses Davis's Response to Statement of Material Facts (ECF No. 33) filed as part of her opposition papers to Riverview's summary judgment motion. Federal Rule of Civil Procedure 56(e) states that a court may deem undisputed a moving party's assertion of fact if it is not properly controverted by the nonmoving party pursuant to Rule 56(c). Similarly, Local Rule 56.1(c) states that all material facts asserted in the moving party's statement of facts shall be deemed admitted if they are not controverted by the nonmoving party's own statement of facts. Federal Rule of Civil Procedure 56(c)(1) provides that a party asserting a genuine dispute of material fact must support the assertion by either citing to materials in the record or by showing that the cited materials do not establish the absence or presence of a genuine dispute.

In Davis's Response to Statement of Material Facts (ECF No. 33), she either admits or denies

Riverview's asserted facts.[1] However, Davis's denial of some of these facts are not supported by citations to the record as required by Federal Rule of Civil Procedure 56(c). Consequently, any fact asserted by Riverview's statement of facts that is not properly controverted by Davis pursuant to Federal Rule of Civil Procedure 56(c) is deemed admitted for summary judgment purposes. *See Chaffin v. City of Fort Smith*, No. 2:05-cv-2061-JLH, 2005 WL 3805977, at 1 (W.D. Ark. Oct. 19, 2005).

The Court will turn now to the undisputed facts of this case. Plaintiff Kimble Davis was employed by Riverview as a mental health therapist. Riverview is an inpatient mental healthcare treatment facility serving adolescents and adults facing a variety of behavioral, emotional, and cognitive health issues. Some of Davis's job duties included performing patient assessment intakes, creating treatment plans, conducting individual and group therapy sessions, maintaining records, attending staff meetings, and writing letters for patients. Davis's supervisor was Terri Rowe, who reported to Riverview's Chief Executive Officer ("CEO"). On May 2, 2017, Rowe gave Davis a "commendable" evaluation and referred to her as a "brilliant therapist." Davis had never been disciplined by Rowe.

Riverview has policies and procedures in place to protect patient confidentiality, including a policy prohibiting employees from taking photographs of patients. Davis testified in her deposition that photographs of patients are considered to be protected confidential patient information. As a condition of her employment and consistent with her obligation under federal law, Davis agreed to abide by Riverview's patient confidentiality policies and to maintain a compassionate understanding

---

[1] In this same document, Davis has also set forth a "statement of material facts in support of her response to Defendant's motion for summary judgment," in which it appears she intends to add facts to the record. Some of these facts are not material facts and some of these facts are undisputed. The Court notes that nowhere has Davis set forth "a separate, short and concise statement of the material facts as to which [she] contends a genuine issue exists to be tried" as required by Local Rule 56.1(b).

of mental illness and the rights and human dignity of the patient.

Riverview's employee handbook, which Davis received and read, prohibits the use of any camera-equipped electronic device to take photographs at the facility because of patient confidentiality regulations. ECF No. 25-1, p. 144. The handbook as well as a separate electronic devices policy prohibits the use of cameras or other video recording devices on its premises "unless specifically requested by management and all parties involved have consented to the recording." ECF No. 25-1, p. 144; ECF No. 25-1, p. 185. The handbook and policy also prohibit the use of cell phones to text "patient information." ECF No. 25-1, p. 144; ECF No. 25-1, p. 186. The handbook states that employees who release confidential information will be subject to disciplinary action up to and including termination. ECF No. 25-1, 144-45. The electronic devices policy states that inappropriate photography, recording, and texting are grounds for immediate termination. ECF No. 25-1, p. 186.

On May 19, 2017, Riverview's outgoing CEO, Angie Crawford, learned that Davis had taken photographs of a Riverview patient and had shown the photographs to co-workers. These four photographs showed the patient at the nurses' desk with soiled shorts, the full length of the patient lying on a table, the patient at the door, and the patient in the lobby at the time of her discharge.

As part of the investigation, Crawford and Riverview's incoming CEO, Sherrie James, met with Davis. This meeting was the first time that Davis and James had met each other. During the meeting, Davis admitted to taking photographs of a patient and showing them to other Riverview employees, including the Medical Director, Dr. Robert Strayhan, and the Director of Nursing, Alicia Williams. Davis did not ask the patient's permission before taking the photographs. The photographs were still on Davis's cell phone and the meeting participants viewed the photographs together. Crawford explained to Davis that photographing patients violated Riverview's patient confidentiality and recording policies and was a terminable offense. Crawford instructed Davis to delete the

photographs from her cell phone and suspended her pending the outcome of the investigation.

Dr. Strayhan testified in his deposition that he and other Riverview employees used their cell phones to coordinate patient care but was not aware of any texts that contained a patient's protected health information or identifying health information. He further testified that he was not aware of any Riverview employee being disciplined for "texting about patient information." ECF No. 32-3, p. 35.

According to Dr. Strayhan, Davis was concerned about the psychiatric and mental status of the female patient who is the subject of the photographs at issue in this case. Davis conveyed to Dr. Strayhan that she felt the patient was too unstable to remain in the unit and the patient's frequent urination on the unit may pose a safety risk to patients and staff. Davis also expressed to Dr. Strayhan that she was afraid her concerns about the patient would not be taken seriously. Dr. Strayhan saw one of the pictures that Davis took of this patient, and he testified that this picture did not contain any protected health information. Dr. Strayhan told Crawford he did not feel that Davis had any malicious intent or that she intended to use the picture in an inappropriate manner.

Because her tenure as Riverview's CEO was ending, Crawford asked James, the incoming CEO, to make the decision regarding Davis's punishment.[2] James read the written statements submitted by Davis, Crawford, Dr. Strayhan, and Williams regarding the incident and examined the photographs. James testified in her deposition that, based on this information and the Riverview policies, she made the decision to terminate Davis's employment, despite Crawford's suggestion that

---

[2] Davis denies that Crawford asked James to make this decision and cites to deposition testimony from Dr. Strayhan stating that he understood Crawford to be the CEO and "his opinion" is that Crawford "made the decision about what to do regarding the photo." ECF No. 32-3, p. 54. Dr. Strayhan further states that he was not involved in the decision and was not privy to any conversations that occurred between James and Crawford. ECF No. 32-3, p. 60-61. The parties do not dispute that Crawford was the CEO. However, both Crawford and James have stated that James was the decision maker. ECF No. 25-6, p. 2; ECF No. 25-2, pp. 9, 14, 41. Dr. Strayhan's opinion that Crawford was actually the decision maker does not create a fact question for purposes of summary judgment. Dr. Strayhan's opinion is speculative, is not supported by evidence, and he has not shown personal knowledge as to who the decision maker was.

4

James merely issue a final warning to Davis. James further testified that she decided Davis's taking and sharing photographs of a patient without consent and purportedly for reasons that were not medically oriented justified immediate termination. Davis was fifty-two years old at the time. Rowe did not participate in the decision to terminate Davis's employment. James, who is five years older than Davis, did not know Davis's age when she made the decision to terminate Davis. Crawford informed Davis of James's decision on May 22, 2017. Davis was replaced with a male under the age of forty.

Davis filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). ECF No. 32-1. Davis alleges in her complaint that she received a right-to-sue letter (ECF No. 1, ¶ 36), and Riverview does not argue that Davis failed to receive one. If the "right to sue" letter is in the record, the Court has failed to locate it.

On April 2, 2018, Davis filed the instant lawsuit alleging that Riverview terminated her and retaliated against her because of her age in violation of the Age Discrimination in Employment Act ("ADEA"). She also brings these same claims under the Arkansas Civil Rights Act ("ACRA"). Riverview argues that it is entitled to summary judgment on both claims.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can

5

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

First, Riverview argues that the ACRA does not recognize a cause of action for age discrimination or retaliation. Second, Riverview argues that Plaintiff has failed to administratively exhaust her retaliation claim. Alternatively, Riverview argues that Plaintiff cannot establish a prima facie case of retaliation. Third, Riverview argues that Plaintiff's age discrimination and retaliation claims both fail because Davis cannot prove that Riverview's stated reason for her termination was pretext for unlawful discrimination. The Court will address each of these arguments in turn and will then address Davis's argument that her complaint alleges a "working conditions" claim related to age discrimination which Riverview ignored in its summary judgment motion.

**A. Arkansas Civil Rights Act**

Both parties agree that the ACRA does not offer protection against age discrimination, thus

6

making it impossible for Davis to pursue claims of age discrimination or retaliation under it. *Morrow v. City of Jacksonville, Ark.*, 941 F. Supp. 816, 826 (E.D. Ark. 1996) (granting dismissal of age discrimination claims because "[t]he list of protected classes [under ACRA] does not include those over 40 or any other age group"); *Bell v. Am. Greetings Corp.*, No. 3:04CV00303-WRW, 2007 WL 1559946, *3, (E.D. Ark. May 29, 2007) (dismissing age discrimination claim under ACRA). Therefore, Davis's ACRA claims must be dismissed as a matter of law.

### B. Exhaustion of Retaliation Claim

Riverview argues that Davis failed to exhaust her retaliation claim. To assert an ADEA claim, Davis must have first exhausted her administrative remedies by filing a timely charge of discrimination with the EEOC. *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018). "The reason for requiring the pursuit of administrative remedies is first to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." *Id.* at 919-920. "The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim, along with allegations that are like or reasonably related to that claim, in federal court." *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005) (internal quotation omitted).

"A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). However, "a litigant's civil claim can be only 'as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.'" *Foster v. BNSF Railway Co.*, 866 F.3d 962, 966 (8th Cir. 2017) (quoting *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002)). Because a person filing EEOC charges typically lacks legal

7

training, the charges are interpreted liberally. *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988). Nevertheless, to allow "a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Williams*, 21 F.3d at 218.

In her charge of discrimination, Davis checked the boxes indicating discrimination based on retaliation and age. The relevant portion of her charge reads as follows:

> I believe I was discharged because of my age (52) in violation of the Age Discrimination in Employment Act (ADEA), as amended. I am aware that in 2016 a 32-year old similarly situated Therapist used her cell phone to video an out-of-control patient and was not disciplined for doing so. I believe I was retaliated against for complaining about the violence and unsafe work environment.

ECF No. 25-1, pp. 188.

Riverview argues that Davis's allegation in her complaint that she was retaliated against for "reporting age discrimination in the workplace" (ECF No. 1, p. 6) is not reasonably related to the charge she brought before the EEOC. The Court agrees with Riverview. In her charge, when complaining about retaliation, Davis never mentioned that she had complained to anyone at Riverview about age discrimination or any ADEA-protected activity. Instead, Davis links her retaliation claim to her complaints about an unsafe work environment. Nowhere in the charge does Davis relate her termination to her participation in any ADEA-protected activity. The EEOC could not reasonably be expected to investigate a retaliation claim based on complaints of age discrimination when Davis never mentioned in the charge that she had complained of age discrimination and, in fact, specifically mentioned a different reason for the alleged retaliation by Riverview. Even under the liberal standard applied, the Court cannot find that Davis's allegation of retaliation in her complaint, which is based on Davis purportedly "reporting age discrimination in the

8

workplace," is reasonably related to the substance of the charge she brought before the EEOC. Consequently, Davis's retaliation claim must be dismissed without prejudice because it is unexhausted.[3]

**C. Age Discrimination Claim**

"The ADEA protects individuals aged 40 and over by prohibiting employers from discharging or otherwise discriminating against such individuals with respect to their compensation, terms, conditions, or privileges of employment on the basis of their age." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) (quoting 29 U.S.C. § 623(a)(1)). The ADEA has similar elements to Title VII for any claim for discrimination or retaliation. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019). "While [the Eight Circuit has] applied *McDonnell Douglas* to ADEA claims when addressing them along with other discrimination claims, it is unclear whether *McDonnell Douglas* technically applies to the ADEA because the ADEA has a 'but for' causation standard rather than the mixed motives standard used in other statutes." *Id.* The Eighth Circuit makes clear, though, that a plaintiff who fails to meet the lower standard of Title VII necessarily fails to meet the ADEA's standard as well. *Id.* Thus, the Court will discuss Davis's age discrimination claims first in light of the *McDonnell Douglas* framework and need not reach the ADEA's separate burden if no claim survives *McDonnell Douglas*.

First, Davis "is tasked with establishing a prima facie case of age discrimination by showing (1) [s]he was at least 40 years old; (2) [s]he was terminated; (3) [s]he was meeting [her] employer's reasonable expectations at the time [s]he was terminated; and (4) [s]he was replaced by an individual who was substantially younger. *Haigh*, 632 F.3d at 468. If Davis "establishes a prima facie case, the burden shifts to [Riverview] to provide a legitimate, nondiscriminatory reason for the termination."

---

[3] Because the Court has found that Davis failed to administratively exhaust her retaliation claim, the Court will not consider Riverview's alternative argument that Davis cannot establish a prima facie case of retaliation.

*Id.* If Riverview "provides such a reason, the burden returns to [Davis] to prove [Riverview's] reason was mere pretext for discrimination." *Id.* "Despite this shifting of the burden of production, '[Davis] at all times bears the ultimate burden of persuasion.'" *Heisler*, 931 F.3d at 794. To survive summary judgment, Davis must point to enough admissible evidence to raise genuine doubt as to the legitimacy of Riverview's motive. *DePriest v. Milligan*, 823 F.3d 1179, 1186 (8th Cir. 2016) (citation and quotation marks omitted).

Riverview's argument that it is entitled to summary judgment on Davis's age discrimination claim cuts directly to the pretext stage of the *McDonnell Douglas* burden-shifting framework. The Court will do so, as well, and will assume for purposes of this opinion that Davis had established a prima facie case of age discrimination. Riverview asserts that Davis cannot prove that its articulated legitimate, nondiscriminatory reason for her termination was a pretext for discrimination. Riverview's stated reason for terminating Davis is that she violated company policy and patient confidentiality by taking and then sharing photographs of a vulnerable patient.

Davis argues that other Riverview employees violated Riverview's cell phone policy by sending text messages to each other to coordinate patient care. Davis further argues that Riverview has not shown that Davis actually breached patient confidentiality. Finally, Davis contends that another employee, Zandra Carroll, used her cell phone to photograph a patient, showed the photographs to her supervisor, and was not disciplined. Davis asserts that this evidence is sufficient to create an issue for trial on the question of whether Riverview's stated reason for terminating her is pretextual.

Davis's allegation regarding other Riverview employees violating the cell phone policy is distinguishable from Davis's conduct. Davis submits as evidence unauthenticated text messages in which patient information is discussed. ECF No. 32-10. Davis claims that these text messages are

between Riverview employees and contain confidential information. Davis, however, has not identified specifically who sent the text messages and whether any members of Riverview's management team, including James, were aware of them. Davis also submits deposition testimony from Dr. Strayhan stating that he will continue to use his cell phone to coordinate patient care. Davis, however, fails to distinguish between the transfer of general patient information for treatment purposes and the transfer of confidential patient information, such as photographs or video. Further, Dr. Strayhan, testified that he has never received a text message that contained confidential patient information. Thus, this evidence does not support the assertion that other Riverview employees violated Riverview's privacy and confidentiality policies and were not terminated.

Davis argues that Riverview has not shown that she actually breached patient confidentiality because she did not show the pictures to anyone outside of Riverview. However, whether Davis actually breached patient confidentiality is irrelevant. The critical inquiry is "whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 862 (8th Cir. 2009). "A plaintiff seeking to survive an employer's motion for summary judgment must therefore show a genuine issue for trial about whether the employer acted based on an intent to discriminate rather than on a good-faith belief that the employee committed misconduct justifying termination." *Id.* Davis has failed to do so here. Riverview's legitimate, nondiscriminatory reason for termination in this case is that she violated company policy and patient confidentiality by taking and sharing photographs of a vulnerable patient. Davis testified in her deposition that she believed "taking a picture without the person's permission for reasons that are not medically oriented is ground for termination" and that she had violated the patient's privacy. ECF No. 25-2, p. 10; ECF No. 25-2, p. 38. She further testified that photographing patients "falls into [the] category" of immediate termination. ECF No. 25-2, p. 15. It is undisputed

that James genuinely believed, and had a good-faith basis to believe, that Davis had engaged in such conduct. Thus, whether Davis actually breached patient confidentiality is not relevant to the determination of whether Riverview's stated reason for Davis's termination is pretext for unlawful discrimination.

Davis also contends that Zandra Carroll engaged in the same misconduct as Davis but was not terminated, which creates an inference of discrimination. "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1126 (8th Cir. 2017) (internal quotation omitted). Davis must establish that she and Carroll are "similarly situated in all relevant respects." *Id*. "Additionally, the employees 'used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Id*. (quoting *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014)).

Carroll states that she took several photographs and video on her cell phone of patients at Riverview to document safety issues, showed them to her supervisor, and was not disciplined for this conduct. ECF No. 32-12, p. 2. There is no evidence in the record from which the Court can determine whether the photographs or videos recorded by Carroll were of comparable seriousness to those taken by Davis, such as whether Carroll's photographs or videos included a patient's face or other identifying information, whether the photographs and videos were shared with other employees or people outside of Riverview, or whether the patient or his/her guardian gave permission for the photos and videos to be taken.

Carroll states that her supervisors were Terri Rowe and Angie Crawford. Carroll was terminated for an unknown reason before Sherrie James started her tenure at Riverview. Thus, James

12

could not have been a decision maker when Carroll took the photographs and video. Because the Court cannot determine whether Davis and Carroll engaged in the same conduct without any mitigating or distinguishing circumstances and because James could not have been a decision maker regarding Carroll's conduct, the Court cannot find that Carroll is a proper comparator. Accordingly, the Court finds that Davis has not produced sufficient evidence to create a genuine issue of material fact as to whether the articulated reason for her termination is pretext for unlawful termination. Consequently, Davis's age discrimination claim must be dismissed.

### C. Working Conditions Claim

Davis asserts that her complaint includes a claim that Riverview treated Davis differently from her under-forty peers by giving her a significantly higher case load than her younger peers.[4] Davis argues that because Riverview did not address the "working conditions" claim in its summary judgment motion, the claim stands. Riverview argues that Davis's complaint cannot reasonably be read to include a "working conditions" claim for at least two reasons: (1) her termination is the only adverse employment action she suffered and (2) her termination is the only purported discriminatory act mentioned in her Charge of Discrimination, which means she failed to administratively exhaust any "working conditions" claim.

The complaint contains a heading styled "Cause of Action—Age Discrimination." Under this heading, Davis alleges that she "was subjected to a higher workload for the same rate of pay as other young therapists employed by Riverview." ECF No. 1, ¶ 30. Under the same heading, Davis alleges that she "was ultimately discharged for action that her younger co-workers engaged in without employment discipline." ECF NO. 1, ¶ 32. It is unclear from reading the complaint that Davis intended to bring an age discrimination claim that is not based upon her termination as that is the only

---

[4] Davis states that Riverview did not address the claim that Davis's "work conditions discriminated against her because of her age." ECF No. 32, p. 2.

adverse employment action named.[5]  Thus, any purported "working conditions" claim is not before the Court.  Further, assuming a "working conditions" claim was before the Court for decision, it would agree with Riverview that the claim is not exhausted because Davis's Charge of Discrimination does not contain any language regarding a change in working conditions other than termination.  *See* ECF No. 32-1.

### IV.  CONCLUSION

For the reasons stated above, the Court finds that Riverview's Motion for Summary Judgment (ECF No. 25) should be and hereby is **GRANTED**.  Accordingly, Davis's retaliation claim is **DISMISSED WITHOUT PREJUDICE** and her age discrimination claim is **DISMISSED WITH PREJUDICE**.  A judgment of even date shall issue.

**IT IS SO ORDERED**, on this 24th day of March, 2020.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[5] "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman. Fifth Judicial Dist. Dep't. of Corr. Servs*, 728 F.3d 800, 804 (8th Cir. 2013) (quotation omitted).  "However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.  *Id*.